In re Petition for DISCIPLINARY ACTION AGAINST Wallace GUSTAFSON, an Attorney at Law of the State of Minnesota.

No. C9–91–2356.

Supreme Court of Minnesota.

Dec. 11, 1992.

Marcia Johnson, Director of Lawyers Professional Responsibility Bd., Tom C. Vasaly, Asst. Director, St. Paul, for petitioner.

Peter S. Popovich, Margo L. Coyle, Briggs and Morgan, St. Paul, for respondent.

PER CURIAM.

A petition for disciplinary action was filed on November 15, 1991, at the direction of the Lawyers Professional Responsibility Board alleging that the respondent, Wallace Gustafson, had committed professional misconduct during his handling of a client's estate matter. Following a referee's recommendation to disbar, this court temporarily suspended the respondent from the practice of law on May 14, 1992. We conclude that respondent's conduct warrants a suspension from the practice of law.

The respondent, Wallace Gustafson, has been licensed to practice law in Minnesota since September 11, 1950. He has been active in community affairs and has served in the Minnesota House of Representatives. Currently, respondent has been practicing with a three-person firm, Gustafson & Waechter, in Willmar, Minnesota. He has been financially successful, has no pressing debts, and has no prior disciplinary record except for a private admonition in 1984.

The allegations contained in the petition for discipline against respondent arise out of respondent's representation of the estate of Kenneth Larson. Larson, ill with cancer and living in a nursing home, retained respondent to draft a will, to clear title to certain real property, and to identify and collect certain assets. Lorraine Schlauderaff, a friend of Larson's, contacted respondent early in 1989 on Larson's behalf, whereupon respondent met with Larson and drafted the requested will as well as a power of attorney in favor of Schlauderaff. When Larson decided he wanted to change a certain bequest he had made in the will, respondent promptly drafted a second will for Larson. This will named respondent as

personal representative and left much of Larson's property to two friends, Virgil Warner and Ervin Mielke. Larson died on July 17, 1989.

The allegations of professional misconduct against respondent arise out of respondent's handling of the fees he collected from Larson. The referee in this matter found that respondent had no written fee agreement with Larson, neither wrote nor submitted a bill for fees to Larson, and made no notes, letters, or memoranda relative to his fees. The referee further found that respondent kept no time records of the hours devoted to Larson's work either prior to receiving payment from Larson, between the date of the payment and Larson's death, or after Larson's death while working on the estate. Respondent apparently had only an oral fee agreement with Larson, the terms of which were known only to Larson, respondent, and Lorraine Schlauderaff.

Respondent and Schlauderaff both testified with regard to the fee agreement at the hearing before the referee in this matter. Respondent testified that, sometime prior to April 11, 1989, he told Larson that his legal fees and costs up to that point amounted to roughly $8,500 and that the fees and costs to probate Larson's estate would amount to approximately $20,000. Respondent also testified that Larson suggested that Schlauderaff be paid $5,000 for the work she had done in caring for him and that she receive an equivalent amount to that received by respondent for the estate work she would perform after Larson's death, as Larson's attorney in fact. Schlauderaff testified that Larson told her to write out the checks. She drafted and signed checks on three separate dates: April 11, 1989 ($8,500 to respondent, $5,000 to herself); June 2, 1989 ($10,000 each to respondent and herself); and July 3, 1989 ($10,000 each to respondent and herself).

The manner in which respondent treated these payments led the referee to conclude that respondent, at the very least, committed a trust account violation which itself is deserving of significant discipline. Respondent cashed the first check, drafted on April 11, 1989, at a bank in a neighboring town and used the other two checks to pay down his own note at his local bank in Willmar. He did not put any portion of the money into a client trust account and did not share the money with the partners at his firm. Respondent testified that he did not put the money in trust because he believed at the time that the money he received from Larson was "earned upon receipt." As for not sharing the money with his partners, respondent testified that Larson was a private client, as opposed to a firm client, so he was under no obligation to share the money with his partners, a characterization that respondent's partners do not dispute.

The referee did not conclude that the trust account violation was respondent's only transgression, however, but also determined that respondent's failure to disclose the receipt of the funds after Larson's death constituted "conduct involving dishonesty, fraud, deceit or misrepresentation" within the meaning of Minn.R.Prof.Conduct 8.4(c). Four days after Larson died, respondent met with Ervin Mielke (one of the primary heirs), Louise Lhotka (Mielke's daughter), and Lorraine Schlauderaff and her husband to discuss Larson's estate. Respondent discussed the problems with the title to Larson's real property, including the fact that certain "Duluth heirs" owned an undivided one-third interest in Larson's Lake Minnebelle farm. However, at that meeting, neither respondent nor Schlauderaff disclosed the receipt of the fee payments they received from Larson.

Respondent declined other opportunities to disclose his receipt of the prepaid fees. When a dispute arose between respondent and Larson's principal heirs as to the interest of the Duluth heirs, the attorney for the principal heirs asked respondent to resign as personal representative of the estate; respondent did so reluctantly. Respondent did not disclose his receipt of the prepaid fees at the time of his resignation, but instead expressed concern about the estate's ability to pay him for his services. Thereafter, respondent remained the attorney for the estate for the limited purpose

of collecting the assets and preparing a proposed inventory. Respondent did not prepare the inventory until March 13, 1990. Only then did respondent disclose that Larson had paid him $28,500 in prepaid probate fees.[1]

A hearing in this matter was held before a referee in February 1992. The referee concluded that respondent violated Minn.R.Prof.Conduct 1.15(a), (b)(3) by failing to deposit the prepaid probate fees into an interest-bearing trust account. The referee also concluded that the respondent's failure to disclose his receipt of the $28,500 after Larson's death was dishonest or fraudulent and constituted an intentional misappropriation in violation of Minn.R.Prof.Conduct 8.4(c). These conclusions prompted the referee to recommend disbarment.

Although respondent admits that he did not deposit the prepaid fees into a trust account and that he did not disclose his receipt of the prepaid fees until he filed the proposed inventory in March of 1990, several months after Larson's death, respondent challenges the referee's conclusions that he committed professional misconduct warranting disbarment. However, because our earlier decisions support the referee's conclusion that respondent committed a serious ethical violation when he failed to place the money he received from Larson into a trust account, the only significant issue presented relates to the appropriate discipline for that violation as well as respondent's failure to disclose promptly his receipt of the prepaid probate fees.

Respondent first argues that he did not know when he received the prepaid fees from Larson that he was required to deposit the monies into a trust account. According to respondent, Minnesota law on the subject of prepaid fees was unclear in April 1989 when he received those prepaid fees because this court had neither heard nor

decided *In re Lochow*, 469 N.W.2d 91 (Minn.1991). In *Lochow*, this court held that advance payments for an attorney's future services are client funds which must be placed in a trust account until earned and which cannot be withdrawn except upon written notice to the client. Because the *Lochow* decision was not issued until 1991, respondent claims he was not on notice in 1989 that the money he received from Larson should be placed in a trust account.

As in *Lochow*, we reject respondent's argument that the status of the law regarding advance fee payments was unclear before 1991. Minn.R.Prof.Conduct 1.15(a)(2), which requires that client funds be deposited in a trust account until earned by the attorney, has been in effect since 1976.[2] Moreover, several articles have been published in the Minnesota *Bench & Bar* on the subject of pre-paid fees, including a 1982 article in which then-Director Michael Hoover stated as follows:

> Retainers are a source of confusion in many cases. Retainers which are charged to ensure the lawyer's availability for the case may, if reasonable, be non-refundable and earned at the time they are collected. Other retainers may be advances by the client to be applied to future costs and services. Such retainers are not earned at the time they are collected and should be placed in the trust account. Withdrawals should be made only as services are performed and costs incurred in behalf of the client.

Michael Hoover, *Many Ethics Complaints are Completely Avoidable*, Bench & Bar of Minn., Feb. 1982, at 21. In addition, respondent's partners testified that there was a clear firm policy to place retainers in a client trust account and that respondent participated in discussions with the other members of his firm in which it was understood that unearned client fees should be

1. The estate pursued claims against respondent and Schlauderaff for the return of unearned funds. Negotiations continued until January 1991, at which time respondent agreed to return $20,000 to the Larson estate and claimed $8,500 as his total fee. The estate also negotiated with Schlauderaff and, in March 1991, Schlauderaff

agreed to refund approximately $16,500 to the Larson estate.

2. Minn.R.Prof.Conduct 1.15(a)(2), is identical to former DR 9–102(A), Minn.Code Prof.Resp., adopted in 1976.

554

deposited into a trust account rather than a business account or a personal account. Accordingly, we adopt the referee's finding that respondent's failure to deposit the prepaid fees into a trust account constitutes a serious, substantial violation which, in and of itself, is "deserving of significant discipline."

■ We turn now to the primary issue, the appropriate discipline considering the trust account violation as well as respondent's failure to disclose promptly to Larson's heirs his receipt of the prepaid fees. The referee concluded that respondent intentionally misappropriated the prepaid fees and recommended disbarment, commenting upon the difficulty he faced in arriving at this recommendation because of the circumstantial nature of the evidence against respondent. He ultimately was persuaded to recommend disbarment by what he described as the "implausibilities of respondent's story."

In support of the referee's disbarment recommendation, the director of the Office of Lawyers Professional Responsibility cites several disciplinary decisions by this court involving an attorney's misuse of an elderly client's assets, among them *In re Larsen*, 459 N.W.2d 115 (Minn.1990), and *In re Franke*, 345 N.W.2d 224 (Minn.1984). The cases cited by the director are distinguishable, however, because they involve obvious cases of intentional misappropriation coupled with other acts of professional misconduct.

In his argument against disbarment, respondent, in contrast, understates the gravity of his misconduct. Respondent admittedly failed to deposit the prepaid fees in a trust account, using the monies instead to pay down his own personal note, a violation which itself may support an order for a lengthy suspension. *See Lochow*, 469 N.W.2d at 98. In addition, respondent at least concealed $20,000 in prepaid fees from the time of Larson's death in July until he filed the proposed inventory the following March. Absent mitigating circumstances, such misconduct could support an order for disbarment.

The particular facts of this case, including respondent's eventual (if not prompt) disclosure of the prepaid fees, his refund of $20,000 of the fees to the estate, his age, his personal and professional reputation, and his cooperation with the director's office, indicate that a suspension adequately discharges this court's responsibility to "guard the administration of justice and to protect the courts, the legal profession and, above all else, the public." *In re Heffernan*, 351 N.W.2d 13, 15 (Minn.1984). We commend the referee for his handling of this difficult matter, and we do not dismiss his disbarment recommendation lightly.

The final responsibility for determining appropriate discipline rests solely with this court, however, *see In re Franke*, 345 N.W.2d 224, 228 (Minn.1984), and it is this court's determination that suspension is appropriate in this instance. Accordingly, it is ordered by this court:

1. That respondent is suspended from the practice of law in the State of Minnesota until May 14, 1993.

2. Respondent shall pay reasonable costs and disbursements pursuant to Rule 24, Rules on Lawyers Professional Responsibility.

TOMLJANOVICH and GARDEBRING, JJ., took no part in the consideration or decision of this matter.